IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2019

## STATE OF TENNESSEE v. TODD ALAN SCHMELING

**Appeal from the Circuit Court for Warren County**
**No. 17-CR-1528     Larry B. Stanley, Jr., Judge**

_____

### No. M2019-00474-CCA-R3-CD

_____

The pro se Defendant, Todd Alan Schmeling, was convicted by a Warren County Circuit Court jury of facilitation of possession of .5 grams or more of methamphetamine with intent to deliver, a Class C felony; facilitation of possession of a firearm during the commission of a dangerous felony, a Class E felony; simple possession of marijuana, a Class A misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor, and was sentenced to an effective term of eight years as a Range II offender in the Department of Correction.  On appeal, the Defendant argues that: (1) his due process rights were violated by his lack of access to updated law books in preparation for trial and appeal; (2) he was improperly prosecuted on the possession of a firearm charge; (3) Lieutenant Mara committed "official misconduct" and "official oppression" by a statement he made during the traffic stop; (4) the trial court erred in denying his motion for production of Lieutenant Mara's statements; (5) the evidence is insufficient to sustain his conviction for facilitation of possession of .5 grams or more of methamphetamine with intent to deliver; (6) his rights to due process and exculpatory evidence were violated vis-à-vis the testing of the drugs by the Tennessee Bureau of Investigation ("TBI"); (7) the State made an improper closing argument; (8) the trial court committed plain error in its jury instruction on possession of a firearm during the commission of a dangerous felony; (9) the notices of enhanced punishment filed by the State were deficient; and (10) the trial court erred in sentencing him.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Todd Alan Schmeling, McMinnville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Lisa S. Zavogiannis, District Attorney General; and Matthew T. Colvard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On January 5, 2018, the Defendant was indicted for possession of .5 grams or more of methamphetamine with intent to deliver, possession of a firearm during the commission of a dangerous felony, simple possession of marijuana, and possession of drug paraphernalia.[1] The trial court filed a document entitled "Arraignment" on April 10, 2018, which stated that the Defendant appeared with his attorney, waived the reading of the indictment, and entered a plea of not guilty. On October 18, 2018, the State filed a notice of enhanced punishment asking the trial court to consider five prior convictions when determining the Defendant's sentencing range.

Thereafter, the Defendant filed several pro se motions, including a motion for discovery, a motion to have access to a law library and legal books, a motion to relieve his attorney and appoint new legal counsel, and a motion to file contempt charges against jail administrators.

The Defendant proceeded to trial on November 7, 2018, at which Lieutenant Mark Mara with the McMinnville Police Department testified that on July 17, 2017, he was driving around on patrol when a vehicle pulled out in front of him, almost causing an accident. He pulled the vehicle over, and as he notified dispatch of the stop, he saw the back-seat passenger, later identified as Joshua Taylor, turn around to look at him and then lean forward and reach down. Thinking Mr. Taylor was trying to hide a weapon or drugs, Lieutenant Mara called for backup. While he waited for dispatch to acknowledge his request, Lieutenant Mara observed Mr. Taylor continue to move around the back seat of the vehicle.

Lieutenant Mara approached the vehicle on the driver's side and stood at the driver's-side rear door in order to observe Mr. Taylor, who continued to move around. Lieutenant Mara was suspicious because most individuals remain very still during a traffic stop, but Mr. Taylor's feet were shuffling, his arms were moving around, and his eyes were bloodshot and watering. Lieutenant Mara asked Mr. Taylor what he was

---

[1] Joshua Taylor was indicted on the same four charges as the Defendant, plus the additional charge of unlawful possession of a weapon by a convicted felon. Mr. Taylor pled guilty to possession of .5 grams or more of methamphetamine with intent to deliver, simple possession of marijuana, and possession of drug paraphernalia.

2

doing, and Mr. Taylor said that he was trying to get a charging cable for his phone and move a car seat and speaker from the back seat. Thinking that Mr. Taylor's justification did not make sense, Lieutenant Mara asked him to exit the vehicle and, after receiving consent, briefly patted him down to make sure he did not have a weapon.

Lieutenant Mara then conducted a cursory search of the area where Mr. Taylor had been sitting, finding a gun and holster on the floorboard where Mr. Taylor's feet had been. Lieutenant Mara removed the gun, which was fully loaded, and put Mr. Taylor in the back seat of his patrol car. He asked Mr. Taylor if the gun belonged to him, and Mr. Taylor responded, "No, that's not my gun. I'm a felon."

When backup arrived, Lieutenant Mara conducted consensual, but unfruitful, searches of the driver[2] and the front-seat passenger, later identified as the Defendant. He obtained consent to search the vehicle, during which he found a multi-colored cosmetic pouch in the back seat between a speaker and a car seat. He asked the occupants whom the bag belonged to, and no one claimed it.

Lieutenant Mara opened the pouch and found, among other things, baggies containing what appeared to be methamphetamine, a baggie of what appeared to be marijuana, empty baggies, a small pipe, a Visa debit card in the Defendant's name, a piece of paper with the name "Todd" written on it, and Verizon prepaid service cards. Lieutenant Mara asked the Defendant why his "credit card" was in the pouch if it did not belong to him. The Defendant replied that he did not have any credit cards and could not explain why the pouch contained drugs and a credit card in his name. The Defendant claimed that the pouch belonged to Mr. Taylor and insisted that there was "no way that he could put the drugs in there." Lieutenant Mara was suspect of the Defendant's claim that he could not reach the back seat, noting that it would be easy for a front seat passenger to access the pouch's location in the back seat, to reach back and hand the pouch to someone, or to throw it back there.

Lieutenant Mara placed the Defendant under arrest and then removed Mr. Taylor from the back seat of his patrol car where he was being held to place him under arrest as well. When he did so, a digital scale fell out from the back seat. Lieutenant Mara searched Mr. Taylor and found baggies of what appeared to be methamphetamine, a soap box, empty baggies, and plastic gloves.

Lieutenant Mara testified that there are certain indicators that a person is selling drugs, for instance - scales, a larger amount of a drug than is typical for personal use, pre-packaged drugs, small baggies, and cash. He said that he had also seen drug dealers with

---

[2] The driver was not charged with any offenses.

3

guns.  Lieutenant Mara explained that it was common for drug dealers to have empty small bags in their possession because they often keep the drugs in one lump and then break it up into smaller amounts for buyers who do not want so much.  He said that scales were used to ensure that the buyer received the correct amount of the drug.  With regard to gloves, Lieutenant Mara stated that plastic gloves were sometimes worn when a person was worried about the transdermal transmission of the drug.  Lieutenant Mara said that prepaid phone cards and drop phones were often used in drug cases in an effort to keep from being tracked by law enforcement.  Lieutenant Mara submitted the suspected methamphetamine and marijuana to the TBI for analysis.

On cross-examination, Lieutenant Mara acknowledged making the statement, "I can make this ten times worse for you" when talking to the suspects during the traffic stop.  He explained that the reason for making the statement was "[b]ecause we're trying to get cooperation."

Agent Lela Jackson, a forensic scientist with the TBI, examined the evidence submitted by Lieutenant Mara; specifically, three baggies of a white crystal-like substance and one baggie of a green leafy substance.  She identified the white crystal-like substance as methamphetamine, and she identified the green plant material as marijuana.  She said that she analyzed approximately .56 grams of methamphetamine, and the weight of the marijuana was 1.02 grams.

Following the conclusion of trial, the jury found the Defendant guilty of the lesser-included offenses of facilitation of possession of .5 grams or more of methamphetamine with intent to deliver and facilitation of possession of a firearm during the commission of a dangerous felony, as well as simple possession of marijuana and possession of drug paraphernalia as charged.

Less than a month later, the Defendant filed a motion for production of witness statements, which the trial court denied because "[a]ny request for discovery should have been prior to the trial date."  The State then filed a notice of intent to seek enhanced punishment and notice of enhancing factors.  The Defendant, thereafter, filed a miscellaneous variety of other pro se motions.  The trial court imposed sentences on March 1, 2019, but the record does not contain a transcript of the sentencing hearing.

The Defendant filed a motion for new trial on March 28, 2019, in which he argued that: (1) he was never served with a warrant, capias, summons, or affidavit of complaint on the possession of a firearm during the commission of a dangerous felony charge and was, therefore, convicted of that offense without being charged with it; (2) the trial court erred in denying his motion for production of witness statements with regard to Lieutenant Mark Mara; (3) the TBI improperly combined the two quantities of

4

methamphetamine which resulted in his being convicted of a greater offense than he should have been; (4) the trial court committed plain error by giving an improper jury instruction on possession of a firearm during the commission of a dangerous felony in that it included the mens reas of knowingly and recklessly; (5) the State's notice of intent to seek enhanced punishment was insufficient because it did not state the specific offender classification sought; (6) the sentence imposed by the trial court was excessive in light of the mitigating factors; and (7) the State made an improper closing argument. After a hearing, the trial court entered a written order denying the Defendant's motion for new trial. The Defendant appealed.

## ANALYSIS

### I. Due Process

The Defendant initially argues that his due process rights were violated by his lack of access to updated law books in preparation for trial and appeal. However, this issue is waived because the Defendant failed to cite to any relevant legal authority or explain why his assertion entitles him to relief, especially considering that he had elbow counsel at trial and, by his own admission, access to the most up-to-date versions of the Tennessee Criminal Justice Handbook and Tennessee Court Rules. See Tenn. R. App. P. 27(a)(7)(A); Tenn. Ct. Crim. App. R. 10(b).

### II. Possession of a Firearm Charge

Similarly to his argument in his motion for new trial, the Defendant asserts that: he was not served with an affidavit of complaint or taken before a magistrate, a preliminary hearing was not conducted, he did not receive a capias or summons, and he was not arraigned on the possession of a firearm during the commission of a dangerous felony charge and was, therefore, improperly prosecuted on that charge.

The record reflects affidavits of complaint and subsequent documents and procedures with regard to all of the Defendant's charges except the possession of a firearm charge, therein lies his argument that he was improperly prosecuted on that charge. However, the record also reflects that the grand jury returned an indictment on the possession of a firearm charge. Tennessee Code Annotated section 40-2-104 "provides for the commencement of a prosecution by several methods, 'all deemed to provide the defendant with sufficient notice of the crime.'" State v. Ferrante, 269 S.W.3d 908, 914 (Tenn. 2008) (quoting State v. Tait, 114 S.W.3d 518, 522 (Tenn. 2003)). The statute provides that:

5

A prosecution is commenced, within the meaning of this chapter, by finding an indictment or presentment, the issuing of a warrant, the issuing of a juvenile petition alleging a delinquent act, binding over the offender, by the filing of an information . . ., or by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense.

Tenn. Code Ann. § 40-2-104.

The date of the offense and the Defendant's arrest was June 17, 2017, and the Defendant was indicted by the grand jury on *all* of the charges on January 5, 2018. Thus, prosecution was initiated against him on the possession of a firearm charge within the statute of limitations. See Tenn. Code Ann. § 40-20-101(b). The record reflects that the Defendant appeared in the Warren County Circuit Court for arraignment on March 28, 2018, waived the reading of the indictment, and pled not guilty. The fact that there was not an affidavit of complaint alleging that the Defendant committed possession of a firearm during the commission of a dangerous felony or any subsequent general sessions court proceedings related to that charge does not negate the Defendant's prosecution under a valid indictment, which was sufficient to provide him notice of the crime.

### III.  Official Misconduct by Lieutenant Mara

The Defendant argues that Lieutenant Mara committed "official misconduct" and "official oppression" by making the statement during the traffic stop, "I can make this 10 times worse for you," which "instill[ed] fear in [him] to get the information he wanted[.]" However, the Defendant has cited to no authorities establishing that he has the right to appellate relief on this claim.

Tennessee Code Annotated section 39-16-402 makes "official misconduct" a criminal offense, and "official oppression" is a criminal offense proscribed in section 39-16-403. Charges for these offenses are brought by indictment, presentment or criminal information. Tenn. Code Ann. §§ 39-16-402(f), -403(d). These statutes do not create a private right of action. Hansom Davis v. Alfred L. Earls, No. W2000-00280-COA-R3-CV, 2001 WL 589138, at *3 (Tenn. Ct. App. May 30, 2001) (citing Buckner v. Carlton, 623 S.W.2d 102, 105 (Tenn. Ct. App. 1981)).

### IV.  Motion for Production of Lieutenant Mara's Statements

The Defendant asserts that the trial court erred in denying his motion for production of Lieutenant Mara's statements under Tennessee Rule of Criminal Procedure

26.2. The record shows that the Defendant filed a motion for production of witness statements twenty-two days after the trial, which the trial court denied because "[a]ny request for discovery should have been prior to the trial date."

Tennessee Rule of Criminal Procedure 26.2(a), commonly referred to as the Jencks Rule, provides:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

A "statement" is defined as "[a] written statement that the witness makes and signs, or otherwise adopts or approves" or "[a] substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in a stenographic, mechanical, electrical, or other recording or a transcription of such a statement." Tenn. R. Crim. P. 26.2(f)(1), (2). "The purpose of Rule 26.2 is to enable counsel to examine a witness's statements in order to test the credibility of that witness at trial." State v. Caughron, 855 S.W.2d 526, 535 (Tenn. 1993).

In this case, the trial court properly denied the Defendant's motion as untimely, as the Defendant filed the motion more than three weeks after trial rather than making a request at trial after Lieutenant Mara testified on direct examination.

The Defendant also claims that he was entitled to Lieutenant Mara's statement under Tennessee Rule of Evidence 612 because Lieutenant Mara "look[ed] at his report to refresh his memorey [sic]" many times while testifying. The Defendant, however, failed to provided citations to the record in his brief of the alleged instances where Lieutenant Mara looked at his report or provide authority for his contention that he is somehow entitled to now look at such statement after trial is over. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. 10(b).

## V. Sufficiency

The Defendant argues that the evidence is insufficient to sustain his conviction for facilitation of possession of .5 grams or more of methamphetamine with intent to deliver because the amount of methamphetamine found in Mr. Taylor's pocket was analyzed along with the amount of methamphetamine found in the cosmetics bag. He asserts that he "was charged with what was in the bag in the back seat of the car not what was found

7

in Josh Taylor[']s pocket" and that "we act[ually] don't know what the real weight of what was in the bag[.]"

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App.

1978)).  Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury.  Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)).

Tennessee Code Annotated section 39-17-417(a)(4) provides, in pertinent, that it is an offense for a defendant to knowingly possess a controlled substance with intent to sell or deliver it.  Possession may be constructive as well as actual.  State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).  "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.  In essence, constructive possession is the ability to reduce an object to actual possession."  State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) (citation omitted).  "'Possession' may be sole or joint; thus, more than one person can be considered in possession of the same drugs."  State v. Clyde Randall Scivally, No. M2001-02261-CCA--R3-CD, 2002 WL 1549063, at *2 (Tenn. Crim. App. July 15, 2002), perm. app. denied (Tenn. Dec. 30, 2002) (citing Copeland, 677 S.W.2d at 476).

"A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony."  Tenn. Code Ann. § 39-11-403(a).

The evidence shows that a cosmetics bag containing a debit card in the Defendant's name, a small baggie of marijuana, two baggies of methamphetamine, prepaid cell phone service cards, and numerous empty small baggies was found in the back seat of the vehicle close to Mr. Taylor and within arm's reach of the Defendant.  In discussing the contents of the cosmetics pouch, Lieutenant Mara's testimony indicates that the weight of the two baggies of methamphetamine was a felony-level amount of more than .5 grams. A search of Mr. Taylor revealed a digital scale, plastic gloves, numerous empty small baggies, and a small baggie of methamphetamine.  From the photographs of the contents of Mr. Taylor's pockets, it is apparent that the amount of methamphetamine found in his pocket was a drastically smaller amount than that in the cosmetics pouch.  Lieutenant Mara testified about how drug dealers utilized large amounts of a drug, scales, small baggies, and prepaid phone cards in their drug selling endeavors.  In the light most favorable to the State, the evidence was sufficient for a rational trier of fact to conclude that the Defendant furnished substantial assistance to Mr. Taylor in his possession of methamphetamine with intent to deliver.

9

As part of his sufficiency challenge, the Defendant also takes issue with the jury's convicting him of facilitation of possession of one drug and simple possession of another drug when both drugs "were found in the same bag." He asserts that he should have been either found guilty of two counts of facilitation or two counts of simple possession. To this contention, we point out that the differing charges and, therefore, convictions were due to the amounts and schedules of the respective drugs.

## VI. Due Process and Brady Claims

The Defendant argues that his right to due process was violated by the failure to test the methamphetamine found in the cosmetics pouch separately from the methamphetamine found in Mr. Taylor's pocket. He also asserts a Brady v. Maryland, 373 U.S. 83 (1963), withholding of exculpatory evidence violation, because if a second test was conducted, he did not receive the result. Despite his contention, the record does not clearly show that Agent Jackson combined the baggies of methamphetamine for testing. Agent Jackson testified that she analyzed .56 grams of methamphetamine, but her report indicates that there was additional crystalline substance in the amount of 10.77 grams that she did not test because the total weight would not exceed 26 grams, the requisite weight for increased punishment. See Tenn. Code Ann. § 39-17-417(i)(10). The .56 grams of methamphetamine was enough to establish the Defendant's guilt of facilitation of possession of .5 grams or more of methamphetamine with intent to deliver. There is no proof in the record that the State withheld the results of an additional test from the Defendant.

## VII. Prosecutorial Argument

The Defendant argues that the State made improper closing argument by referring to a "form" that was not in evidence, arguing that he was the leader or the one criminally responsible for the offense because he was twenty-two years older than the others, discussing its decision not to call Mr. Taylor as a witness, referring to the unindicted driver, and "many, many times" reminding the jury that the Defendant was indicted.

The record shows that during its closing argument, the prosecutor commented that two of the individuals were "pretty young" and observed that the Defendant was twenty-two years older than they were. The prosecutor then said, "Think he might be the leader? Think he might be the person directing this? The person criminally responsible for this?"

Later, in rebuttal argument, the prosecutor said:

I could have been a real jerk and made Josh Taylor testify, but, like I said, he's in drug court and he's doing well. When you testify against

somebody you get sort of a taint on you as a snitch and sometimes people aren't real happy about that. I didn't want to do that to Mr. Taylor, so I didn't make him testify.

We initially note that the Defendant has waived this issue because he did not make a contemporaneous objection to the challenged statements. See State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (failure to object to prosecutor's alleged misconduct during closing argument waives any later complaint). Therefore, he is only entitled to relief if the prosecutor's statements rose to the level of plain error.

For a defendant to be entitled to relief under the plain error doctrine, the following elements must be shown:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

Minor, 546 S.W.3d at 67. "If a defendant fails to establish any of these criteria, an appellate court must deny relief under the plain error doctrine, and an appellate court need not consider all criteria when the record demonstrates that one of them cannot be established." Id. (citing State v. Knowles, 470 S.W.3d 416, 425 (Tenn. 2015)).

The five generally recognized areas of prosecutorial misconduct occur when the prosecutor intentionally misstates the evidence or misleads the jury on the inferences it may draw from the evidence; expresses his or her personal opinion on the evidence or the defendant's guilt; uses arguments calculated to inflame the passions or prejudices of the jury; diverts the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions on the consequences of the jury's verdict; and intentionally refers to or argues facts outside the record, other than those which are matters of common public knowledge. State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003). Tennessee courts "have traditionally provided counsel with a wide latitude of discretion in the content of their final argument" and trial judges with "wide discretion in control of the argument." State v. Zirkle, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). A party's closing argument "must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999).

For a defendant to be entitled to a new trial on the basis of allegedly improper remarks during the closing argument, the comments must be shown to have prejudiced the case by affecting the jury's verdict. Id. at 559. In determining whether this occurred, we consider the following factors: (1) the conduct viewed in light of the circumstances and facts in the case; (2) any curative measures taken by the trial court and the prosecution; (3) the prosecutor's intent in making the improper statements; (4) the cumulative effect of the prosecutor's statements and other errors in the record; and (5) the relative strength and weakness of the case. Id. at 560.

The Defendant is not entitled to relief because he cannot establish the breach of a clear and unequivocal rule of law or that consideration of the error is necessary to do substantial justice with regard to any of the challenged statements by the prosecutor. First, the prosecutor's reference to a "form" that the Defendant claims was not in evidence was the forensic examination request form submitted to the TBI which lists the birth dates for both Mr. Taylor and the Defendant. This form was entered as an exhibit at trial. Second, the prosecutor's arguing that the Defendant was the leader in the offense was not unreasonable given the wide age gap between the Defendant and Mr. Taylor and in light of the State's theories of constructive possession, joint possession, and criminal responsibility. Third, the prosecution's discussing its decision not to call Mr. Taylor as a witness was not improper because it was offered in explanation to the Defendant's assertion that Mr. Taylor was the only guilty one or "[w]hy is he not sitting with me here now fighting this case[.]" Fourth, the prosecutor's reference to the uncharged driver had no impact on the trial because the jury was shown the video of the traffic stop and was therefore certainly aware of the driver's presence. Lastly, the prosecutor's reminding the jury that the Defendant was indicted was not improper or misleading because the grand jury did indict the Defendant on the charged offenses, and the Defendant did not show anywhere in the State's closing argument where the prosecutor encouraged the jury to find the Defendant guilty simply because he had been indicted.

### VIII. Jury Instruction

The Defendant argues that the trial court's inclusion of the mens reas of "knowingly" and "recklessly" in its instruction on possession of a firearm during the commission of a dangerous felony amounted to plain error because it lessened the State's burden of proof.

The record reflects that the trial court instructed the jury that the State had to prove beyond a reasonable doubt that (1) the Defendant possessed a firearm; (2) that the possession was with the intent to go armed during the commission of or attempt to commit possession of methamphetamine in an amount of .5 grams or more; and (3) "that

12

the [D]efendant acted intentionally." After defining the terms "firearm" and "intentionally," the trial court defined the terms "knowingly" and "recklessly."

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Farner, 66 S.W.3d 188, 204 (Tenn. 2001) (citing State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000); State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). When determining on appeal whether jury instructions are erroneous, this court should "review the charge in its entirety and read it as a whole." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997) (citing State v. Stephenson, 878 S.W.2d 530, 555 (Tenn. 1994)). A jury instruction is "prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." Id. (citing State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); Graham v. State, 547 S.W.2d 531 (Tenn. 1977)).

Again, the doctrine of plain error applies when all five of the following elements have been established:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

Minor, 546 S.W.3d at 67.

Here, the Defendant cannot show that consideration of the error is necessary to do substantial justice. The trial court properly instructed the jury on the elements of possession of a firearm during the commission of a dangerous felony and that it was required to find beyond a reasonable doubt that "the [D]efendant acted intentionally." Although the trial court included the surplusage definitions of "knowingly" and "recklessly," the trial court never instructed the jury that it could convict the Defendant based on any mens rea other than "knowingly." The Defendant is not entitled to relief under the plain error doctrine.

## IX. Notice of Enhanced Punishment

13

The Defendant argues that he is entitled to relief due to deficiencies in the notices of enhanced punishment filed by the State. He asserts that the pretrial notice of enhanced punishment was "ambiguous and incomplete" because it did not state the sentencing range it was seeking. He asserts that the post-trial notice of enhanced punishment filed by the State was "not valid" because it was filed without a court order ordering that it be filed; "ambiguous" because it did not list the courts of conviction for his prior convictions and three of the prior convictions occurred on the same day; and "misleading" for requesting that the court apply enhancement factors (2), (3), and (4) when the facts did not support their application.

Tennessee Code Annotated section 40-35-202(a) provides:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions.

Id.; see also Tenn. R. Crim. P. 12.3(a).

At a minimum, the notice provision of the statute requires "that the State file: (1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction[s], the dates of the convictions, and the identity of the courts of the convictions." State v. Livingston, 197 S.W.3d 710, 713 (Tenn. 2006). "[W]here the State substantially complies 'an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief.'" State v. Patterson, 538 S.W.3d 431, 438 (Tenn. 2017) (quoting State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990) and citing State v. Debro, 787 S.W.2d 932, 934 (Tenn. Crim. App. 1989)). "In other words, what is required is 'fair' notice, not 'perfect' notice." Livingston, 197 S.W.3d at 713.

The record shows that the State filed a notice of enhanced punishment on October 18, 2018, approximately twenty days before trial. The notice stated that the State "request[ed] that the following convictions be used in determining the Defendant's sentencing range pursuant to TCA § 40-35-202" and then listed five convictions, including the dates and counties and states of conviction. As this court observed in

14

Taylor, "[s]ince our sentencing system contains only three range categories above the "standard" range, the "enhanced punishment" herein logically means punishment as a multiple, persistent, or career offender. State v. Taylor, 63 S.W.3d 400, 413 (Tenn. Crim. App. 2001). Even though the Defendant had time to inquire into any ambiguities in the notice, there is no indication that he did so. We conclude that the State substantially complied with the notice requirement and "[w]e may assume that [the] Defendant was aware of his own extensive criminal history prior to trial and note that he has failed to show any prejudice arising from a lack of knowledge as to which particular range the State was contemplating to seek for purposes of sentencing." Id.

The record shows that after trial, the State filed a notice of intent to seek enhanced punishment and notice of enhancing factors. In the notice, the State asserted that the Defendant was a "career" offender based on the five prior convictions that had also been listed in the pre-trial notice. For each conviction, the State listed the date, nature of conviction, and county and state of conviction.

The Defendant provides no authority for his assertion that the post-trial notice was not valid because there was no court order directing that it be filed. Moreover, the notice substantially complied with the notice requirement and the Defendant has shown no prejudice due to the failure to provide additional details about the courts of conviction. In addition, to the extent the Defendant challenges the applicability of prior convictions occurring on the same day, such would be determined by the court at sentencing. Furthermore, to the extent the Defendant argues that the notice was misleading because of the asserted applicable enhancement factors, we note that the statute provides that "following a finding of guilt, the court may require that . . . [t]he district attorney general file a statement with the court setting forth any enhancement or mitigating factors the district attorney general *believes* should be considered by the court." Tenn. Code Ann. § 40-35-202(b)(1) (emphasis added). The Defendant has provided no authority to support the claim that his beliefs regarding the applicability of enhancement factors somehow invalidate the notice.

## X. Sentencing

The Defendant argues that the trial court erred in classifying him as a Range II offender and in not sentencing him to split confinement or probation. Interwoven throughout his argument is also an allegation of error in the application of enhancement factors and failure to apply mitigating factors. Initially, we note that the Defendant did not include a transcript of the sentencing hearing in the record on appeal, which drastically inhibits our review. From the pre-sentence report that was included in the record, we glean that the Defendant has, at a minimum, prior felony convictions for robbery, false imprisonment, first-degree burglary, and two convictions for third-degree

15

burglary. These prior convictions were certainly enough to classify him as a Range II offender. See Tenn. Code Ann. § 40-35-106. As to the Defendant's remaining contentions, without a transcript of the sentencing hearing, we are unable to determine if the court abused its discretion in imposing a sentence of confinement or review the court's reasoning for applying enhancement factors and/or not applying mitigating factors. We note that the trial court's sentencing determinations are entitled to a presumption of correctness. See State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012); State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Moreover, the Defendant's argument that he should not have been sentenced to total confinement seems to rest solely on his contention that he played a minor role in the offense, which the trial court could disbelieve in its discretion.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____

ALAN E. GLENN, JUDGE

16